See dissenting opinion of BREAUX, C. J., 42 South. 366.

---

(42 South. 419.)

No. 16,039.

WILLIAMS v. VARNARDO.

STATE ex rel. WILLIAMS v. VARNARDO. et al.

(Dec. 10, 1906.)

DIVORCE—SEPARATION FROM BED AND BOARD —EVIDENCE.

Public abuse and insult, accompanied by the husband's denial of the wife's right to see her children, coupled with evidence of prior misconduct on the part of the husband, *held* to be sufficient to affirm a judgment of separation from bed and board in favor of the wife.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Divorce, §§ 68, 71.]

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Clay Elliott, Judge.

Action by Elias Williams against Lucinda Varnardo, and application by the state, on the relation of Elias Williams, for writ of habeas corpus against Lucinda Varnardo and others. The cases were consolidated and judgment rendered for defendant in both proceedings, and plaintiff appeals. Affirmed.

Reid, Purser & Reid, for appellant. William Hutchinson McClendon, Prentiss Bernard Carter, and Macaulay Iverson Varnardo, for appellee.

LAND, J. Plaintiff sued for a separation from bed and board on the ground that the defendant had abandoned the matrimonial domicile without just cause of complaint, taking with her their youngest child, Edna. The prayer of the petition was that the defendant wife be cited to return to the matrimonial domicile, and for judgment ordering her to return, and, on her failure to obey the judgment, for a decree of separation from bed and board. Plaintiff also prayed that he be given the custody of his minor children.

Fifteen days after the filing of the suit plaintiff sued out a writ of habeas corpus for the purpose of getting possession of the child Edna.

The defendant wife answered both proceedings on the same day. In the suit for a separation the defendant, after pleading the general issue, admitted the marriage and the birth of the five children as alleged, and that she had the custody of the infant, Edna. Defendant avers that on December 15, 1904, she was ordered to leave the matrimonial domicile by her husband, who threatened to take her life if she should return; that her husband, almost from the beginning of their married life, had been habitually unkind and cruel to her; that he was and is addicted to the use of intoxicating liquors, and frequently became intoxicated, and when in such a state he was unkind, harsh, cruel, and brutal in his conduct towards respondent, on several

occasions inflicting blows and personal violence upon her; and that his conduct has been such as to render their living together insupportable. Defendant, by way of reconvention, prayed for a judgment of separation from bed and board, for the custody of the children, and for alimony, and for an injunction restraining the plaintiff from disposing of the community property pendente lite. The court ordered an injunction to issue as prayed for, and also that an inventory of the community property be made according to law.

In her answer in the habeas corpus suit, the respondent mother averred her natural right to the custody of the child in question, an infant 13 months old and still nursing, and also her legal right to such custody during the pendency of the suit.

The case was tried and judgment was rendered in favor of the defendant wife, rejecting plaintiff's demand in both proceedings, and decreeing in her favor a separation from bed and board, with custody of all the children, and alimony at the rate of $12.50 per month from June 30, 1905. The same judgment also recognized the community rights of the defendant wife and perpetuated her injunction. Plaintiff appealed.

In his written opinion the trial judge reviewed all the material evidence, and arrived at the conclusion that the fault was entirely with the husband. It appears that the wife, with her baby, left the common domicile on December 15, 1904, and went to her father's house to reside. The husband kept the four oldest children with him. The evidence shows that after this separation, on several occasions, when the mother attempted to caress and talk with these children, she was ordered away by her husband with curses and abusive epithets. Several propositions relating probably to a division of property passed between the parties, but they could reach no understanding, and the negotiations ended by plaintiff sending a message to the defendant that she could go back to her father's house, where she came from. A witness for the defendant testified that in February, 1905, the plaintiff and the defendant met in a public road, when he cursed her and told her that he was going to move, and to send for her things. The breach between the parties was complete. The husband denied to his wife the privilege of visiting the four oldest children, and even refused to receive articles of clothing which she had made for them. In 1902 there was a temporary separation between the parties. According to the story of one witness, the wife, with her young baby, was put out of the house, but returned and stayed all night. Then the husband carried the wife to her father's house. Shortly afterwards the wife returned to the matrimonial domicile. What occasioned the separation of December 15, 1904, is not disclosed by the evidence. The particular cause was known only to the plaintiff and the defendant, whose mouths are closed as witnesses for or against each other. The cause must have been both bitter and deep, since it was admitted on the trial below that "the living together of the plaintiff and the defendant is insupportable."

The judgment of the district court is based mainly on what occurred after the separation; that is, the public conduct of the plaintiff on three occasions towards the defendant, which, in the opinion of our learned Brother, "is unpardonable in the mind of a high spirited well-behaved woman." The evidence shows no misconduct or even fault on the part of the wife.

It is true that she left the matrimonial domicile, but her presence was not desired, and she was not invited to return. The husband undertook to separate the wife and mother absolutely from her four eldest children. When she approached them in public places, she was ordered away with insult and

contumely. Such conduct, we think, amounted to "cruelty" in the sense of the Civil Code, and it is admitted that the living together of the parties would be insupportable. Considering the conduct of the plaintiff before and after the separation, it is not difficult to conclude that this intolerable condition was brought about by his own fault. The separation of December 15, 1904, did not change the relation of the parties. The mother retained the right to see her children and to visit them, even at the matrimonial domicile. The husband still owed her respect as his wife and the mother of his children. The separation might have proved temporary had not the husband publicly abused his wife, denied her rights as a mother, and treated her as a stranger and intermeddler. The conduct of the husband in 1902, although condoned by the subsequent reconciliation of the parties, may be considered as corroborative evidence. Cass v. Cass, 34 La. Ann. 611.

While the evidence is insufficient to sustain the charge of habitual intemperance, it does show that the plaintiff was addicted to the use of ardent spirits, and sometimes became intoxicated.

We find no difficulty in arriving at the conclusion that the defendant has shown good cause why she should not be ordered to return to the matrimonial domicile, and to a life which is admitted to be insupportable. With this admission in the record, and with the evidence before us of the plaintiff's conduct towards his wife, and considering that the mouth of the defendant is sealed as to what took place in the common dwelling, we have also concluded to affirm the judgment of the lower court. The district judge, with his knowledge of the parties and of the witnesses, and of the local surroundings, found that the plaintiff was in fault in bringing on the conditions which rendered his wife's living with him insupportable to a woman of her class.

Judgment affirmed.