153 So.2d 441 (1963)
Mrs. Cecilia Mary PIZZO, wife of Anthony Joseph SCIAMBRA
v.
Anthony Joseph SCIAMBRA.
No. 1067.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1963.
Rehearing Denied June 4, 1963.
Certiorari Refused June 28, 1963.
*442 Brumfield & Organ, Jerome P. Halford, New Orleans, for opponent-appellee.
Zelden & Zelden, Sam Monk Zelden, O. C. Stein, Jr., New Orleans, for opponent-appellant.
Charles E. McHale, Jr., New Orleans, Notary Public.
Before YARRUT, CHASEZ and HALL, JJ.
YARRUT, Judge.
This matter on appeal is the proposed notarial tableau of distribution for the partition and settlement of the community, following the judgment of separation in favor of Defendant-husband, on his reconventional demand, with the dismissal of Plaintiff-wife's main demand for similar judgment, on July 10, 1961.
The husband, by agreement between the parties, retained the management of the community property, subject to an accounting for all rents collected by him up to the date of the partition and public sale on March 8, 1962. Only the husband has appealed, hence the only issues on appeal are:
1. His claim for the allowance of his attorneys' fees, in the sum of $3103.27, incurred in the successful defense of the wife's main demand, and the prosecution of his reconventional demand in the separation suit, disallowed by the District Court.
2. His claim for household items, valued at $1625.00, alleged to have been removed by the wife before the auction, disallowed by the District Court.
3. Her claim for an accounting of the stock of the community grocery store, inventoried at $5000.00, depleted by the husband before the auction sale, for which the District Court allowed $4550.50.
4. Her claim for an accounting of the grocery store checking account at the time of the inventory, for which the Court allowed $1500.00.
5. Her claim for an accounting for 12 months' rent for the grocery store occupied by the husband, at $200.00 per month, allowed by the Court.
6. Her claim for an accounting for rent for the premises occupied by the mother and aunt of the husband, at $200.00 per month, for which the Court allowed $1980.00.
7. Her claim for an accounting for rent for 3717-19 Baudin St., occupied by the husband, for which the Court allowed $900.00.
8. Her claim for an accounting for household goods the husband removed from *443 the Baudin St. property, for which the Court allowed $1319.75.
In addition to the above, the District Court decreed the husband was indebted to the wife's separate estate for $576.00 and $23.00 gas and water bills, a total of $599.00.
The District Court amended the tableau of distribution to reduce the amount allowed the husband by $6325.12 and $599.00, and to increase the amount for the wife by the same amounts, the net result of which was to fix the husband's share at $21,528.97, and the wife's at $17,777.33. We now consider the disputed items seriatim, as follows:

Attorneys' fees.
One of the husband's attorneys in his reconventional demand, in which he was successful, testified that, of the total fee, only $2853.37 was for services rendered to the judgment of separation in his client's favor, and $250.00 for services rendered in the ensuing partition proceedings. The husband contends that the fees of his attorneys are a community debt, citing: Talbert v. Talbert, 199 La. 882, 7 So.2d 173; Uchello v. Uchello, 220 La. 1061, 58 So.2d 385; Tanner v. Tanner, 229 La. 399, 86 So.2d 80; Vicknair v. Terracina, 168 La. 417, 122 So. 276; Munchow v. Munchow, 136 La. 753, 67 So. 819.
The wife contends that the above cases were decided before LSA-C.C. Art. 155 was amended by Act 178 of 1962, to provide that the judgment of separation from bed and board carries with it the separation of goods and effects, and is retroactive to the date on which the petition for the same was filed.
LSA-C.C. Art. 155 is pertinent here, but LSA-C.C. Art. 150 is applicable, which provides:
"From the day on which the action of separation shall be brought, it shall not be lawful for the husband to contract any debt on account of the community, nor to dispose of the immovables belonging to the same and any alienation by him made after that time, shall be null, if it be proved that such alienation was made with the fraudulent view of injuring the rights of the wife."
Since the wife's suit was dismissed, the date of the filing of her suit is of no importance and considered as never filed. However, the date of filing of the husband's reconventional demand, resulting in judgment in his favor, became the date of suit. The husband legally became obligated for his attorneys' fees before the filing of his reconventional demand.
The case of Gastauer v. Gastauer, 143 La. 749, 79 So. 326, holds that a suit for separation or divorce, which has been dismissed, is considered as not having been filed.
The case of Ohanna v. Ohanna, La.App., 129 So.2d 249, is merely confirmatory of LSA-C.C. Art. 150 that the husband cannot contract a debt binding the community during the pendency of the suit, and has no application to a debt contracted by the husband before the filing of his successful suit.

Contents of Grocery.
This claim is based on the occupancy by the husband of the grocery after the judgment of separation for his own account. At the time of judgment the contents were appraised, in globo, at $5000.00, including fixtures and equipment and retail merchandise. The then remaining contents were sold at public auction to the wife for $449.50.
There was no revised inventory taken before the public sale, nor was an auditor requested by either party, or appointed by the Court, to audit and report his findings. The husband admitted that, at the time of the separation judgment, he usually maintained a $3000.00 merchandise inventory, sometimes $4000.00.
Since the husband had the same opportunity to purchase the grocery's contents at the public sale, we must assume that his failure to bid higher than his wife was an *444 implied admission that her bid was the fair market value of all the contents. There is no evidence that any of the equipment and fixtures of the grocery were removed before the sale, except the merchandise, which necessarily shifted during the husband's operation by reason of retail sales and re-purchases. Since he admitted maintaining an average merchandise inventory of $3000.00 to $4000.00, we must assume such quantity was on hand when he took over for his own account. The District Court was correct in charging him to account for the original inventory of $5000.00, less $449.50 proceeds of sale, or $4550.50.

Cash in Grocery Checking Account.
This claim is for one-half the cash on hand and in the grocery checking account as of the date of separation. An officer of the Bank testified that, as of July 10, 1961, there was actually a balance of $1751.98 in the husband's account, an active business account which fluctuated from day-today. There were outstanding checks on that date amounting to $1016.96, but the balance was $1723.00 on July 17, 1961 from the exhibits filed. The $1500.00 allowed by the District Court in the absence of definite proof, is a fair estimate of the cash on hand and in banks, needed by the husband to operate the grocery.

Rent.
The general rule is that a co-owner of an immovable has the right of occupancy before partition, without having to account to his co-owner for its use, except when he profits therefrom by his own industry or exploitation.
In the case of Juneau v. Laborde, 228 La. 410, 82 So.2d 693, the court said:
"* * * In determining the amount due and recoverable by a co-owner out of possession from his co-owner in possession, a clear distinction should be drawn between the personal occupancy, use and enjoyment of property by the possessor and the rents and revenues derived by him therefrom, either from a lease or by his own industry or exploitation. As to the latter, he must account to his co-owner for all rents and revenues he has received because, in obtaining these fruits, he acts not only for himself but also as the agent of his co-owner for the latter's just proportion. Davis v. Ruddock Orleans Cypress Co., 132 La. 985, 62 So. 114; Satcher v. Radesich, 153 La. 468, 96 So. 35 and Vance v. Sentell, 178 La. 749, 152 So. 513."
The rent allowed for the grocery premises for 12 months, at $200.00 per month, was based on expert testimony of a realtor. As the husband operated the grocery for his own industry or exploitation, he was properly charged to account for this item or for $2400.00.
Likewise, the $1980.00 rent allowed for the community property occupied by the mother and aunt of the husband, was the legal obligation of the husband (LSA-C.C. Art. 239), which he could not impose upon the dissolved community. This item was fixed on expert testimony, and the Trial Court was correct. To charge this rent to the community would, in effect, permit the husband to exploit the community for his personal benefit.
With reference to the $900.00 rent charged against the husband for occupying the matrimonial domicile, this allowance was improper. The husband, as co-owner with his wife, had a right to occupy the matrimonial domicile himself under the authorities cited herein, without any obligation to account therefor until the act of partition.
In Wagner v. Wagner, La.App., 134 So.2d 670, the husband, after agreeing to pay his wife and children $500.00 monthly alimony, and permitting them to occupy the former family residence, when charged with contempt for non-payment of alimony, *445 sought credit on the alimony by a belated rent claim for their occupancy of the family home. This belated rent claim was disallowed since the alimony was fixed by consent, and the wife's and children's occupancy must have been considered in fixing the alimony.
Here, the husband contends that he and his wife entered into a stipulation following the judgment of partition, which reads in part, as follows:
"Mr. Sciambra is to make a general accounting of all rents collected by him from July 10, 1961, up to and including the date of the partition of the involved property, which accounting shall include all of the community property over which he has had control."
This stipulation merely confirmed his legal obligation under the law, neither adding or detracting therefrom.

Contents of Baudin St.
These items were many and varied, and cover many pages of testimony. The District Court, as we have, must also have been convinced that numerous items were unexplainably missing and that the husband, who was in exclusive possession of the premises until the act of sale in July 1962, and responsible for this community property, failed to account for it, which the District Court fixed at $1319.75. We can find no error in this allowance.
The tableau of distribution as approved by the District Court should be amended so as to allow the husband's attorneys' fees of $2853.37 as a community debt, and the disallowance of $900.00 charged against him for rental of the matrimonial home.
For the above and foregoing reasons, the judgment of the District Court homologating the tableau of distribution is amended to allow thereon the husband's attorneys' fees of $2853.37 as a community debt, and the disallowance of the $900.00 charged against him for rental of the matrimonial home and, as thus amended, the judgment of the District Court is affirmed; costs in both courts to be borne equally by the parties.
Judgment amended and affirmed.